UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HEALY, by MARGARET
HEALY, his Legal Guardian,

      Plaintiff,

v.                                                  Case No. 08-14320
                                                 Honorable Patrick J. Duggan

SEARS, ROEBUCK & CO.,

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 21, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Margaret Healy, mother and legal guardian of John Healy ("Plaintiff"), initiated this action in state court against Defendant Sears Roebuck and Company ("Sears"), alleging handicap discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act ("PDA"), Mich. Comp. Laws §§ 37.1101-37.1607. On October 10, 2008, Sears removed Plaintiff's complaint to this Court based on diversity jurisdiction, 28 U.S.C. §§ 1332, 1441. Presently before the Court is Sears' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The motion has been fully briefed.

On June 11, 2009, this Court scheduled a motion hearing for July 16, 2009. (Doc. 16.) Plaintiff's counsel, however, failed to appear at the July 16 hearing. Concluding that

oral argument would not aid in the Court's resolution of Sears' motion, the Court subsequently informed the parties that it would not be rescheduling the hearing and that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2).  (Docs. 17, 18.)

**I.      Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could

reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

Plaintiff is a 43 year old male with Down's Syndrome, which was diagnosed at his birth. Sometime between 1984 and 1986, Plaintiff began attending the Lutz School which is a special education center the Macomb Intermediate School District operates to serve special needs students. The Lutz School provides "experience and training to promote each student's transition from school to community life" and "provides training to help [students] develop appropriate work habits and attitudes." (Def.'s Mot. at 2.)

As part of his schooling at Lutz, Plaintiff worked at the Lord and Taylor and then the Sears stores at Lakeside Mall in Sterling Heights, Michigan. A Para Pro (teacher) accompanied Plaintiff and assisted him in completing his job duties. Plaintiff completed his schooling at Lutz in 1992. In October 1992, he submitted an application for employment in Sears' Receiving Department– the department where he worked while attending Lutz.

Sears hired Plaintiff as a part-time Merchandise Support Associate in its Receiving Department in November 1992. In January 2003, Plaintiff's job title changed to Receiving Associate, although he continued to work in the Receiving Department. On October 15, 2006, Diane Konen became the Store Manager.

In early 2007, Raymond Boyd, Plaintiff's supervisor and the "Receiving Lead," approached Konen to review the schedules he had made for the Receiving Department. At that time, Konen noticed that Plaintiff was not being regularly scheduled and she asked Boyd why. Boyd told Konen that Plaintiff could not complete the Receiving Associate job without the assistance of another associate. Boyd explained that the only job duty Plaintiff had been performing was removing the plastic wrap from clothing after it was received, removed from the box, and hung on a rack. Boyd provided that Plaintiff could not open boxes and unpack merchandise himself and that another associate was needed to do these tasks. Boyd lacked the payroll to schedule someone to assist Plaintiff in this manner and so he did not schedule Plaintiff to work. Konen also learned that Plaintiff was incapable of independently entering his social security number into the store's computer system, which was required of employees to punch in at the beginning of their shift and to punch out at the end of their shift.

Following her conversation with Boyd, and because she believed Sears could not simply not schedule employees, Konen concluded that she needed to find out more about Plaintiff's limitations and/or abilities. (Def.'s Mot. Ex. 23 at 10-11.) On May 8, 2007, Konen contacted "88Sears"– a hotline available to Store Managers– explained the situation with Plaintiff and asked for advice. (Def.'s Mot. Ex, 16 at 35.) An 88Sears representative advised Konen to provide Plaintiff with an accommodation request form– "Health Care Provider Certification (ADA)"– to be completed by Plaintiff's physician. (*Id.*) Konen thereafter asked Jennifer Cherget– the Human Resources Lead at her store at

4

the time– to mail Plaintiff the paperwork.

 On June 25, 2007, Cherget called Plaintiff's mother, Margaret Healy ("Mrs. Healy"), to inform her that Sears needed paperwork completed by Plaintiff's doctor to assess whether Plaintiff was capable of performing the functions of the Receiving Associate job. On the same date, Cherget sent the Health Care Provider Certification form to Mrs. Healy.

 On July 20, 2007, Mrs. Healy took Plaintiff to see Dr. S. Abbas Jafri so he could complete Sears' paperwork. Dr. Jafri completed the form and Mrs. Healy sent it back to Sears. (Def.'s Mot. Ex. 9.) In the area of the form where Dr. Jafri was asked to review Plaintiff's job description, note any function Plaintiff could not perform, and identify accommodations that would make it possible for him to complete the function, Dr. Jafri wrote only: "Pt has Down's Syndrome" and "can work as tolerated." (*Id.*)

 Believing that she needed more information, Konen mailed Mrs. Healy a letter on August 18, 2007, and enclosed a form describing the Receiving Associate position. (Def.'s Mot. Exs. 10, 11.) In her letter, Konen requested that Mrs. Healy have Plaintiff's doctor note on the form "whether [Plaintiff] can alone meet/perform each of the roles and responsibilities and physical demands . . . of the job as listed . . ." (*Id.*) Mrs. Healy took Plaintiff to see Dr. Lauresha Hysa on September 20, 2007, in order to get the form completed. After examining Plaintiff, Dr. Hysa wrote "no" next to each role and responsibility listed on the Receiving Associate job description, except for "[p]repares and moves merchandise to the appropriate staging locations, including the stockrooms,

5

HFM customer pick-up bins, and the sales floor" after which she wrote "with assistance." (*Id*. Ex. 11.) Dr. Hysa noted at the bottom of the form: "Pt has been working [for] Sears for 14 years with limited responsibilities preparing merchandise from the floor, with directions. He was never able to complete the above responsibilities." (*Id*.)

 Plaintiff's sister mailed Dr. Hysa's assessment to Sears on October 1, 2007. On November 1, 2007, Konen called 88Sears and explained that she received the documentation from Plaintiff's doctor and the doctor indicated that Plaintiff could not perform any of the position's job functions, except some staging with assistance. (Def.'s Mot. Ex. 16 at 31.) The 88Sears representative asked Konen to fax the documentation from the doctor and Konen complied. (*Id*. at 32.) The 88Sears representative then "[p]artnered with ADA Manager & Legal Counsel" and, on November 14, 2007, informed Konen that "Legal Counsel recommends that a brief letter be sent . . . to [Plaintiff] explaining that based on the doctor's note [Sears] ha[s] no job to fit his restrictions." (*Id*. at 33.) Konen also was provided with the language of the letter that she was instructed to send to Plaintiff. Konen thereafter sent the letter to Plaintiff, terminating his employment effective November 19, 2007.

 On June 10, 2008, Mrs. Healy was named Plaintiff's partial legal guardian. (Def.'s Mot. Ex. 14.) On October 10, 2008, this lawsuit was filed. Plaintiff alleges two "counts" in the complaint: (I) handicap discrimination in violation of the PDA and (II) "mental and emotional damages." Sears filed the pending motion for summary judgment on April 15, 2008. Plaintiff filed a response to the motion on May 29, 2009; Sears filed a reply on

June 11, 2009.

### III.   Applicable Law and Analysis

Sears seeks summary judgment with respect to Plaintiff's handicap discrimination claim, arguing that there is no direct evidence of disability discrimination and Plaintiff cannot establish a prima facie case of discrimination because his disability is related to his ability to perform the Receiving Associate position that he held at Sears. With respect to Plaintiff's claim for mental and emotional damages, Sears argues that no such claim exists. Instead, Sears points out, "'damages' are an element of Plaintiff's recovery under a substantive claim." (Def.'s Mot. at 17.)

Plaintiff responds that there is direct evidence of discrimination based on a comment that someone at Sears allegedly made to Mrs. Healy. Mrs. Healy testified that someone named "Ed," who she spoke to when she called Sears for Plaintiff's weekly work schedule, told her "in a roundabout way" that "they do not want [Plaintiff] to work [there] anymore." (Def.'s Mot. Ex. 24 at 133-34.) Mrs. Healy indicated that this statement was made to her before she took Plaintiff to see Dr. Hysa. Alternatively, Plaintiff argues that there are material issues of fact with respect to whether his disability prevented him from performing the duties of his job.

First, there is no direct evidence of discrimination based on Mrs. Healy's testimony regarding what a Sear's employee allegedly told her. Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. Blue Cross & Blue*

7

*Shield of Michigan*, 469 Mich. 124, 132-33, 666 N.W.2d 186, 192 (2003) (internal quotation marks and citations omitted).  Mrs. Healy did not recall the exact words that she was told by someone named "Ed" at Sears and nothing that she conveyed suggests that Plaintiff's disability was the motive for Sears "not want[ing] him to work [there] anymore."  Moreover, the Ed with whom Mrs. Healy spoke when she called about Plaintiff's schedule has been identified as Edward Rogers, an office assistant in the store's Human Resources Department.  (Pl.'s Resp. Ex. F at 4.)  Contrary to Plaintiff's claim (Pl.'s Resp. at 4), Rogers did not testify that he is a supervisor.  More importantly, Rogers testified that he played no role in the decision to terminate Plaintiff's employment. (*Id.*)  "[C]omments made by individuals not involved in the decision-making process do not constitute direct evidence of discrimination."  *Benjamin v. Brachman*, 246 Fed. App'x 905, 920 (6th Cir. 2007) (citing *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002); *see also Krohn v. Sedgwick James of Michigan, Inc.*, 244 Mich. App. 289, 301, 624 N.W.2d 212, 218 (2001).

Absent direct evidence of discrimination, the Court must evaluate Plaintiff's claim of handicap discrimination by applying the burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *See Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515, 520-21 (2001).  Pursuant to this test, Plaintiff first must establish a prima facie case of discrimination by presenting evidence that: (1) he is disabled as defined by the act or that Sears regarded him as disabled; (2) his alleged disability is unrelated to his ability to

perform his job duties; and (3) he was discharged because of his disability. *Peden v. City of Detroit*, 470 Mich. 195, 204, 680 N.W.2d 857, 863 (2004) (citations omitted). If Plaintiff succeeds, Sears must articulate a legitimate, non-discriminatory reason for its employment decision. *Id*. at 205, 680 N.W.2d at 864; *Hazle*, 464 Mich. at 464, 628 N.W.2d at 521. To survive summary judgment, Plaintiff then must demonstrate that the evidence, when construed in his favor, "is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by [Sears] toward [P]laintiff.'" *Hazle*, 464 Mich. at 465, 625 N.W.2d at 522 (quoting *Lytle v. Malady*, 458 Mich. 153, 176, 579 N.W.2d 906, 916 (1998)). Sears argues, and this Court agrees, that Plaintiff cannot satisfy his initial burden of demonstrating a prima facie case of discrimination.

For purposes of its motion, Sears concedes that Plaintiff can establish the first and third prongs of his prima facie case. Sears maintains and the undisputed evidence establishes, however, that Plaintiff was not able to complete the job duties of his Receiving Associate position because of his Down's Syndrome, with or without accommodation.[1] Contrary to Plaintiff's assertion, Dr. Jafri's comments on the Health

---

[1] As the Michigan Supreme Court has provided, the question to be addressed with respect to the second prong of a plaintiff's prima facie case is whether Plaintiff can perform the "essential functions" of his position. *See Peden*, 470 Mich. at 205-06, 680 N.W.2d at 864. It is an employer's "right" to determine what the essential functions of an employment position are and, if an employer has prepared a written description of the position, this description is evidence of the essential functions of the job. *Id*. at 206 and n. 10, 680 N.W.2d at 864 and n.10. "[T]he burden of proving that a challenged function is not 'essential' lies with the plaintiff." *Id*. at 208, 680 N.W.2d at 865.

9

Care Provider Certification form do not "identif[y] clearly and unequivocally that [Plaintiff] could perform all aspects of the [Receiving Associate] job without any accommodation necessary." (Pl.'s Resp. at 5.) Dr. Jafri's answers on the form fail to respond to whether Plaintiff was capable of performing any of the functions of his position and do not even indicate that Plaintiff is able to work in general. (*See* Def.'s Mot. Ex. 9.) Dr. Hysa, in comparison, clearly provided that Plaintiff could not perform all but one of the "Key Roles and Responsibilities" required of the Receiving Associate position. (*Id*. Ex. 11.) Dr. Hysa indicated that Plaintiff could perform one of the duties of the position, but even then only "with assistance." (*Id*.) Dr. Hysa further noted: "[T]here is a notation that patient has been doing this job for 13 years with limitation and help and obviously, he is not able to fulfill most of [the] job descriptions on the form." (*Id*. Ex. 17.)

     Plaintiff raises several arguments in an attempt to create a genuine issue of material fact with respect to whether Plaintiff's disability was related to his ability to perform his position. Plaintiff maintains that Sears has "conveniently 'misplaced'" a job description form completed by Dr. Jafri. There is no evidence, however, that Dr. Jafri ever received or reviewed the job description form or that Sears ever received such a form completed by Dr. Jafri. The letter Cherget sent to Plaintiff on June 25, 2007, reflects only that the Health Care Provider Certification was sent to Plaintiff for completion by his doctor. (*See* Def.'s Mot. Ex. 8.) Moreover, the letter that Konen sent to Mrs. Healy on August 18, 2007– after receiving the Health Care Provider Certification form completed

by Dr. Jafri– indicates that if Dr. Jafri ever received the job description form, it was never completed and/or returned to Sears.  (Def.'s Mot. Ex. 10.)  Konen wrote, in part:

> We need verification from John's doctor as to whether he can alone meet/perform each of the roles and responsibilities and physical demands, etc. of the job as listed on the enclosed position description form.
>
> Please have John's doctor note accordingly on the enclosed form and return to us as soon as possible.

(*Id.*)  Mrs. Healy did not answer the letter by indicating that Dr. Jafri already provided this information; instead, she responded by taking Plaintiff to the doctor to have the form completed.  (*Id.* Ex. 24 at 90-91.)

Plaintiff also argues that Sears did not have Dr. Hysa's evaluation when it made the decision to terminate him.  According to Plaintiff, Konen "made it perfectly clear during her cross examination by [P]laintiff's counsel in her deposition that the only medical document . . . she had prior to firing [Plaintiff] and sending out [the termination letter], was . . . the two page document filled out on 7/20/907[] by Dr. Jafri."  (Pl.'s Resp. at 5.)  Plaintiff therefore "specifically request[s] that the Court review the entire line of questions and answers."  (*Id.* at 6.)

The Court has reviewed the entire transcript of Konen's deposition and what is clear is that during several exchanges Plaintiff's counsel prevented Konen from explaining that she obtained and Sears relied on the job description form completed by Dr. Hysa when it decided to terminate him.  (*See, e.g.,* Def.'s Mot. Ex. 23 at 12-13, 37.)  Konen's testimony did not change "dramatically" after a break and during questioning by

11

Sear's counsel; rather, it was only then that she was given an opportunity to state that she received the form completed by Dr. Hysa, she submitted it to 88Sears, and then was instructed to send the termination letter to Plaintiff. (*Id.* at 70-71, 74-76.) In any event, other evidence indicates that Konen had the form before sending the termination letter to Plaintiff.

The 88Sears call log details the following: (1) on November 1, 2007, Konen conveyed Dr. Hysa's comments to an 88Sears representative and was advised to fax Dr. Hysa's assessment to 88Sears; (2) on November 6, 2007, Konen sent and 88Sears received the assessment; and (3) on November 14, 2007, 88Sears instructed Konen to send the termination letter to Plaintiff. (*Id.* Ex. 16.) Mrs. Healy's deposition testimony and Dr. Hysa's examination notes also confirm that Sears had the job description form completed by Dr. Hysa before the termination letter was sent. (*See id.*, Ex. 17; Ex. 24 at 91, 94 (reflecting that Mrs. Healy took Plaintiff to see Dr. Hysa on September 20, 2007 so the doctor could complete the job description form and that the completed form was mailed back to Sears on October 1, 2007).)

Finally, Plaintiff argues that Mrs. Healy's deposition testimony demonstrates that Plaintiff's disability did not interfere with his ability to perform "the Receiving job." According to Plaintiff, "Mrs Healy made it abundantly clear in several places during her deposition that she saw John do the Receiving job on numerous occasions" and that he "was able to do the job **without** assistance." (Pl.'s Resp. at 2.) Yet the only responsibilities Mrs. Healy described Plaintiff completing were stripping the plastic from

merchandise hanging from racks and removing the trash. (Def.'s Mot. Ex. 24 at 18-19, 30-34.) When asked if he did any other tasks while working at Sears, Mrs. Healy answered no. (*Id*. at 34.) The fact that Plaintiff could perform these limited tasks, however, does not mean that he was capable of performing the Receiving Assistance position.

As noted earlier, a court must defer to an employer's description of the "essential functions" of a position and it is the plaintiff's burden to demonstrate that a challenged function is not "essential." *Peden*, 470 Mich. at 206-208, 680 N.W.2d at 864-65. In response to Sears' motion, Plaintiff does not argue that he held a different position at Sears or that the roles and responsibilities of the position were not essential. During her deposition, Mrs. Healy seemed to suggest that Sears should have allowed Plaintiff to continue working in the Receiving Department, performing the limited tasks of which he was capable. (*See* Def.'s Mot. Ex. 24 at 98.) "An employer . . . has no duty to accommodate the plaintiff by recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position." *Kerns. v. Dura Mech. Components, Inc.*, 242 Mich. App. 1, 16, 618 N.W.2d 56, 64 (2000) (citations omitted).

## IV.  Conclusion

Based on the above analysis, the Court finds no genuine issue of material fact with respect to whether Plaintiff's disability was related to his ability to perform the job that he held at Sears. Plaintiff was not able to perform the duties of the Receiving Associate

position, with or without accommodation.  Accordingly, he cannot establish a prima facie case of discrimination in violation of the PDA and his claim fails.  As a result, his claim for "mental and emotional damages" also fails.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Summary Judgment is **GRANTED**.

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:
Scott E. Combs
Charles C. DeWitt, Jr.